NIEMEYER, Circuit Judge,
dissenting:
Samuel Buchbinder commenced this action against Rony Natanzon to enforce an indemnity agreement signed by Natanzon. In the agreement, Natanzon “guarantee[d] personally that he [would] reimburse Sam Buchbinder without offset demand or *992 counterclaim any draw on the $l-million letters of credit with all costs and attorneys fees of collection.” (Emphasis added). Natanzon gave this indemnification agreement in exchange for Buchbinder’s transfer of his 50% interest in ERN Israel, a company that the two had theretofore jointly owned. While ERN Israel was jointly owned, Buchbinder had, on the basis of his own assets, obtained the issuance of the $l-million letters of credit for ERN Israel.
On cross-motions for summary judgment, the district court concluded that the letters of credit expired on January 31, 2003, even though the face of the documents indicated that they would not expire until December 31, 2003. The district court relied on the fact that the issuing bank had made an error in extending the letters of credit from January 31 to December 31, 2003, to conclude that the letters of credit had “ceased to legally exist” after January 31. But this conclusion overlooked the legal principle that letters of credit are enforced as written under the “independence principle.” See Provident Bank of Md. v. Travelers Prop. Ca. Corp., 236 F.3d 138, 147 (4th Cir.2000). Accordingly, when the Israeli bank drew on the letters of credit after January 31 but before December 31, the issuing bank was obligated under well-established principles to pay the Israeli bank the $1 million. The district court, however, reasoned from its erroneous finding that the letters of credit “ceased to legally exist” after January 31 to conclude that there could no longer be a draw as referred to in Natanzon’s indemnity agreement after that date.
The majority opinion appropriately recognizes that the letters of credit did not cease to exist, because on their face they had not expired. The Israeli bank was entitled to rely on the letters of credit as written under the “independence principle” that attends letters of credit. See Provident Bank ofMd., 236 F.3d at 147.
But the majority then ignores the plain language of Natanzon’s indemnity agreement and reforms the agreement to conform to its understanding of the contextual transaction. I respectfully submit that we are not free to reorder the parties’ expectations that were clearly and unambiguously stated in a binding document. The agreement required Natanzon to indemnify Buchbinder for “any draw on the $1-million letters of credit.” “Any” means any, i.e., every. See Norfolk Southern Ry. v. James N. Kirby, Ltd., 543 U.S. 14, 31, 125 S.Ct. 385, 160 L.Ed.2d 283 (2004) (chiding court of appeals for limiting the meaning of “any” as used in a contract); United States v. Gonzales, 520 U.S. 1, 5, 117 S.Ct. 1032, 137 L.Ed.2d 132 (1997) (noting that “any” means “ ‘one or some indiscriminately of whatever kind’ ” (quoting Webster’s Third New Int’l Diet. 97 (1976))).
The Israeli bank in effect paid $1 million to Natanzon by drawing on the $1 million letters of credit in accordance with their terms to discharge Natanzon’s debt to the bank. Under the indemnity agreement, Natanzon then became obligated to reimburse Buchbinder for that draw. In failing to recognize this obligation, we now inappropriately rearrange the business relationships and provide Natanzon with a $1 million windfall that he otherwise would not have had.
Accordingly, I would reverse.